UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Frankfort)

| | | |
|---|---|---|
| CANDICE N. DEMPSEY, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| V. | ) | |
| | ) | |
| CITY OF LAWRENCEBURG, et al., | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | Civil Action No. 3: 09-33-DCR |
| and | ) | |
| | ) | |
| CITY OF LAWRENCEBURG, et al., | ) | |
| | ) | |
| Third-Party Plaintiffs, | ) | |
| | ) | |
| V. | ) | |
| | ) | |
| RUBY S. FRAZIER, et al., | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Third-Party Defendant. | ) | |
| | ) | |
| and | ) | |
| | ) | |
| OWNERS INSURANCE COMPANY, | ) | |
| | ) | |
| Intervening Plaintiff, | ) | |
| | ) | |
| V. | ) | |
| | ) | |
| RUBY S. FRAZIER, et al., | ) | |
| | ) | |
| Intervening Defendants. | ) | |

*** *** *** ***

This matter is pending for consideration of the Defendants' Motion for Summary Judgment. [Record No. 68] For the following reasons, the motion will be granted, in part, and denied, in part.

I.  BACKGROUND

The facts of this case are undeniably tragic. On May 13, 2009, Timothy Frazier filed a Domestic Violence Petition (the "Petition") in the Nelson County District Court, seeking an Emergency Protection Order (the "EPO") against Candice Dempsey ("Dempsey"), the mother of his son, Cole Frazier. At that time, Candice Dempsey had been granted custody of Cole pursuant to an April 30, 2008 EPO. In the Petition, Frazier requested that the Nelson County Court give him temporary custody of Cole. [Record No. 68-2] The Petition listed Timothy Frazier as the Petitioner and Candice Dempsey as the Respondent. [*Id.*] That same day, Judge John David Seay issued an EPO as requested. The EPO listed Timothy Frazier as the Petitioner, but also included that the Petition was brought on behalf of Cole Frazier. [Record No. 68-3] The May 13, 2009 EPO is the center of the current controversy.

The EPO contained a number of orders. It restrained Dempsey from committing acts of abuse or threats of abuse. It further restrained Dempsey from contact with the Petitioner and it ordered that Dempsey remain at least 500 feet away from the Petitioner and Petitioner's family. The EPO also prevented Dempsey from communicating with the Petitioner. However, the EPO form contained a box which could be checked to effectuate a transfer of custody. That box was not checked by the Court. In a box designated "Court Action" on the Petition, Judge Seay wrote, "If petitioner believes the child is in danger with respondent, he is referred to appropriate location of Cabinet for Health and Family Services or to law enforcement." [Record No. 68-3] The EPO was

to remain in effect until May 27, 2009 – the date on which a hearing was scheduled before the Nelson District Court.[1]

The same night the EPO was issued, Timothy Frazier called the Lawrenceburg Police Department ("LPD"). He told the LPD that he was concerned for Cole's welfare. During that call, Frazier told the LPD that an EPO had been issued, but that it did not transfer custody. The call was treated as a "Welfare Check," and an officer was sent to Dempsey's home to check on the child. The officer found no apparent danger.

On May 14, 2009, Timothy Frazier brought the EPO to the LPD and presented it for service on Dempsey. He was first met by Officer Todd Sparrow ("Sparrow"), a dispatcher for the LPD. When Sparrow entered Frazier's information into the computer, he noticed the Dispatch Incident Detail for the call Frazier had placed the previous night. However, he did not listen to an audio of the call. Sparrow dispatched Officer Nathan Doty ("Doty") to meet Frazier and handle the EPO.

Officer Doty met with Frazier who handed Doty a stack of documents. Doty did not immediately see the EPO itself but he read the Petition. Doty then called the Nelson County Clerk's office to ensure the EPO had not already been served. Doty spoke to the Clerk in charge of EPOs. The parties dispute the characterization of that phone call.[2] The Defendants assert that Doty was

---

[1] The parties dispute the proper interpretation and effect of the EPO. The Defendants argue that, whereas the EPO was brought on behalf of Cole Frazier, he was a "Petitioner" and the order prevented Dempsey from contacting him. Even if Cole was not a Petitioner, the Defendants argue that he fits squarely within the definition of "family" and, therefore, the EPO prevented Dempsey from having further contact. They argue that, as a result, the EPO removed custody from Dempsey. However, Plaintiffs focus on the fact that the box effecting a transfer of custody was not checked, and, therefore, assert that transferring custody was inappropriate.

[2] The transcript of the phone call between Doty and the court clerk is as follows:

Doty: I have an EPO . . .
Clerk: Uh huh (affirmative).

asking the clerk questions regarding whether the EPO actually transferred custody. They contend that the clerk informed him that transferring custody was the proper action. The Plaintiffs, on the other hand, argue that Doty made *affirmative statements* regarding the fact that the EPO transferred custody, to which the clerk agreed or affirmed. After making the call, Doty, who was scheduled elsewhere, passed the execution of the EPO to Lieutenant Chris Atkins ("Atkins").

Doty told Atkins that he had verified that the EPO required the removal of the child. Accordingly, Atkins went to Candice Dempsey's house and served her with the EPO. He then removed Cole from Dempsey's custody and gave him to Frazier. On May 26, one day prior to the scheduled custody hearing, Plaintiff alleges that Frazier shot and killed Cole and then committed suicide.

Plaintiffs have sued the City of Lawrenceburg and Dispatcher Sparrow, Officer Doty, and Lieutenant Atkins, both in their individual and official capacities (collectively the "City Defendants"). Dempsey alleged five causes of action: (1) an action under § 1983 against the officers for a deprivation of her and Cole's constitutional rights; (2) an action under § 1983 against the City

---

Doty: . . . From a Timothy Frazier.
Clerk: Uh huh (affirmative).
Doty: I don't know if, we, we're not showing anything as far as it being entered for service of anything — I didn't know if it has already been served or . . .
Clerk: I don't think it has, I just got it this morning. It came in late yesterday afternoon.
Doty: Okay. And it says with the motion for relief, it says that the child was to, uh, that the child, that the father is granted temporary custody of the child?
Clerk: Uh huh (affirmative).
Doty: Okay, and that was signed by the Judge?
Clerk: Yes.
Doty: Okay. So basically what we need to do is we need to go serve it and pick up this child, correct?
Clerk: Right.
Doty: Okay, I just needed . . .
Clerk: That would be correct.

[Record No. 68-1, p. 5–6]

for failure to train; (3) a negligent supervision claim against the City; (4) a negligence claim against the officers; and (5) a claim for punitive damages. The City Defendants brought the present motion requesting summary judgment on all of the Plaintiffs' claims.

**II.    ANALYSIS**

    **A.    Summary Judgment Standard**

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A genuine issue of material fact exists if there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in favor of that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). In other words, the determination must be "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52.

The moving party initially bears the burden of informing the court of the basis for its motion. *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002) (citing *Celotex*, 477 U.S. at 323). The movant does so by bringing forward the relevant portions of the record which establish the absence of a genuine issue of material fact. *Id.* Once the movant has satisfied its burden, the nonmoving party must go beyond the pleadings and produce specific evidence to demonstrate that there is a genuine issue of material fact. *Id.* The nonmoving party must do more than cast some "metaphysical doubt" on the material facts. *Id.* (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). It must present significant, probative evidence of a genuine

issue in order to defeat the motion for summary judgment. *Id.* In reviewing the motion, the Court must view all facts and inferences in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 586–87.

### B. Official Capacity Claims Against the Individual Officers

Plaintiff has brought suit both against the City of Lawrenceburg and against Officers Doty, Atkins, and Sparrow in their official capacities. "A suit against an individual in his official capacity is the equivalent of a suit against the governmental entity." *Matthews v. Jones*, 35 F.3d 1046, 1049 n. 14 (6th Cir. 1994). "There is no longer a need to bring official-capacity actions against local government officials, . . . local governments can be sued directly for damages and injunctive and declaratory relief." *Kentucky v. Graham*, 473 U.S. 159, 167 (1985) (citing *Monell v. New York City Dept. of Social Services*, 436 U.S. 658 (1978)). Accordingly, a suit against both the governmental entity itself and governmental officials in their official capacity is redundant. *See Owens v. Southerland*, No. 03-95, 2006 WL 625289, *3 (Mar. 10, 2006, E.D. Ky.) (holding that where the plaintiff had sued both the city and two officers in their official capacity, the suits against the officers were "redundant and will be dismissed"). In the present case, because the Plaintiffs have sued the City of Lawrenceburg directly, the official-capacity actions against Officers Doty, Atkins, and Sparrow are duplicative. Therefore, summary judgment will be granted with respect to the individual Defendants in their official capacity.

### C. Count I - Plaintiff's § 1983 Claims Against the Officers

Dempsey's first cause of action is against Officers Doty, Atkins, and Sparrow for a deprivation of her constitutional rights. The officers, who are also being sued in their individual

capacity, claim that they are entitled to qualified immunity. For the reasons below, the Court will grant the officers motion with respect to this claim.

The doctrine of qualified immunity protects individual government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzegerald*, 457 U.S. 800, 818 (1982). The doctrine balances the tension between two important interests — the need to shield public officials from liability for the reasonable performance of their duty and the need to hold public officials accountable when they exercise power irresponsibly. *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009). The protection applies whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Id.* (citing *Groh v. Ramirez*, 540 U.S. 551, 567 (Kennedy, J. dissenting)). Qualified immunity "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 229 (1991).

Courts have made clear that the "driving force" behind the doctrine of qualified immunity is a desire to prevent government officials from having to proceed through trial. *Id.* (citing *Anderson v. Creighton*, 483 U.S. 635, 640, n. 2 (1987). For this reason, qualified immunity is described as "an immunity from suit rather than a mere defense to liability . . . it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Accordingly, the Court has "repeatedly . . . stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

"Once the qualified immunity defense is raised, the burden is on the plaintiff to demonstrate that the officials are not entitled to qualified immunity." *Silberstein v. City of Dayton*, 440 F.3d 306,

311 (6th Cir. 2006). When a government official invokes qualified immunity in a § 1983 action, the claimant must make a two-fold showing to overcome the defense: she must show (1) that the official's conduct violated a constitutional right, and (2) that the constitutional right was "clearly established." *Saucier v. Katz*, 533 U.S. 194 (2001); *Silberstein v. City of Dayton*, 440 F.3d 311 (6th Cir. 2006). In *Pearson*, the Supreme Court reaffirmed the two prongs of the *Saucier* test, but held that it no longer need be applied in a rigid, two-step order. *Pearson*, 129 S. Ct. at 816–17. Explaining that rigid adherence to the *Saucier* protocol may waste judicial resources and cause the needless litigation of complex constitutional questions, the Court held that judges "should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 818.

Here, it is appropriate to first examine whether any rights the officers' conduct violated were clearly established. The Court adopts this approach because many of the constitutional questions involved turn on an analysis of whether the officers' actions were reasonable — which is the crux of the "clearly established" inquiry. For example, Dempsey has alleged an unconstitutional seizure under the Fourth Amendment. The rule is well established that the Fourth Amendment only prohibits *unreasonable* searches or seizures. *United States v. Ferguson*, 8 F.3d 385, 388 (6th Cir. 1993). Additionally, Dempsey has argued that the officers violated Cole Frazier's Fourteenth Amendment rights under the state-created danger theory. Under that theory, conduct is only prohibited if the state actors knew or should have known that their conduct placed the victim in harm's way — in other words, if their conduct was unreasonable. *Kallstrom v. City of Columbus*, 136 F.3d 1055 (6th Cir. 1997).

On the surface, it appears clear that the constitutional violations of which Plaintiff complains — an unreasonable seizure under the Fourth Amendment, a state-created danger under the Fourteenth Amendment, and the interference with family integrity under the Fourteenth Amendment — are all "well established." Each right is plainly established within the case law of the Sixth Circuit. However, as the Sixth Circuit has explained, "it is not that simple." *McCumons v. Marougi*, 2010 U.S. App. LEXIS 14283, *5. The inquiry demanded by the second *Saucier* prong "turns not just on whether the legal right is 'clearly established' in the abstract, but on whether the officer's action, 'assessed in the light of the legal rules that were clearly established at the time it was taken,' was 'objective[ly] reasonable[].'" *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 639 (1987)); *see also Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 302 (6th Cir. 2005) (requiring plaintiff to establish that official's action was "objectively unreasonable in light of the clearly established constitutional rights"). The Supreme Court has made clear that an officer may make "reasonable mistakes" as to "legal constraints" and still be entitled to qualified immunity. *Saucier v. Katz*, 533 U.S. 194, 205 (2001), *overruled on other grounds Pearson v. Callahan*, 129 S. Ct. 808 (2009). The mistake may be of law, fact, or a mixed question of fact and law. *Pearson*, 129 S. Ct. at 815. Therefore, the crux of the analysis is whether the officers, even if mistaken, acted reasonably in transferring custody of Cole to Timothy Frazier.

The Court finds that, even when viewing the facts in the light most favorable to the plaintiff, each of the officers acted objectively reasonably in light of the given circumstances. The officers were serving an *Emergency* Protective Order issued by the court. The court, which should be presumed to have considered the facts and circumstances of the situation, found "that the allegations indicate an immediate and present danger of domestic violence and abuse." On May 13, 2009, the

court found that Candice Dempsey — not Timothy Frazier — posed an immediate and present danger. The officers acted reasonably in light of that order. When there was a question concerning proper procedure, they called to clarify. Each of the officers acted objectively reasonably in carrying out the directives of the court — removing a child from a situation a state court judge had found to pose an immediate threat of danger.

Officer Sparrow's actions were objectively reasonable. When Timothy Frazier entered the LPD, Sparrow took his information, entered it into the computer, and then dispatched an officer to immediately address the situation. In other words, he did his job. The only accusation Plaintiff has made against Sparrow is that he did not listen to the audio recording of the previous night's call. However, failing to listen to that call was not objectively unreasonable. Timothy Frazier actions in bringing in an EPO against Candice Dempsey was consistent with there having been a previous welfare check. An EPO which follows a welfare check would not give rise to suspicion for a reasonable officer. Further, it would be imprudent for this Court to impose upon a police dispatcher the duty to listen to every call previously made by each individual who entered the station, especially in the case where the individual's present business is consistent with previous calls. *See Smoak v. Hall*, 460 F.3d 768, 785 (6th Cir. 2006) (holding that dispatchers were not liable under § 1983 for a failure to ascertain additional information before incorrectly dispatching officers to a potential robbery). Here, Officer Sparrow acted objectively reasonable under the facts presented. Therefore, any rights Officer Sparrow's conduct may have violated were not "clearly established" in these circumstances. Thus, qualified immunity is appropriate.

Likewise, Officer Doty's actions were objectively reasonable. To the extent that there was an ambiguity in the proper action to take in light of the EPO, Officer Doty called the court to

confirm the action to be taken. Officer Doty spoke to the Nelson County Clerk who was responsible for EPOs. The Clerk told officer Doty that a transfer of custody was proper. Even accepting Dempsey's argument that Doty was making statements – not asking questions – the Clerk *affirmed* the statement "the father is granted temporary custody of the child." Doty again confirmed that the officers needed to serve the EPO and remove the child. And he was told this course of action was correct. Under these circumstances, it was reasonable for Officer Doty to rely on the clarifications from a member of the court's staff responsible for EPOs. Plaintiffs allege that Officer Doty acted grossly negligently or recklessly indifferent by not *also* calling Judge Seay's chambers. However, the Court will not impose upon officers the duty to obtain a second opinion when they have been instructed as to the meaning of an order by court personnel. Further, as the Sixth Circuit has stated "we have found no cases in this circuit where a nonsupervisory officer who was not present at the scene or did not actively participate in a constitutional deprivation was liable for the failure to prevent a constitutional violation from occurring." *Smoak*, 460 F.3d at 785. Officer Doty was neither supervisory, nor present at the scene. Accordingly, Officer Doty actions were objectively reasonable. Therefore, any rights Officer Doty's conduct violated were not "clearly established" and in these circumstances, and he is entitled to qualified immunity.

Finally, Lieutenant Atkins actions were objectively reasonable under the facts presented. First, Lieutenant Atkins testified that he removed Cole from his mother in reliance on the portion of the EPO which directed that Cole could not be within 500 feet of Dempsey. Second, Officer Doty advised Lieutenant Atkins that he had verified that the EPO required removal of the child. The Court will not impose a duty upon an officer to retrace the work of a competent co-worker. Officer Doty was told that the EPO would be properly executed by giving temporary custody to Timothy

Frazier. Lieutenant Atkins relied on that information as well. The Court cannot find that Lieutenant Atkins actions were objectively unreasonable under these circumstances. While he certainly would have understood that Plaintiff's rights were at issue, he acted in reliance on a court order and a subsequent explanation of that order. Therefore, any rights Lieutenant Atkins' conduct might have violated were not "clearly established" in these circumstances. Thus, he is also entitled to qualified immunity.

In summary, Dempsey has not overcome her burden in establishing that qualified immunity does not apply. Dispatcher Sparrow, Officer Doty, and Lieutenant Atkins are entitled to qualified immunity because their actions were objectively reasonable in light of the circumstances and rights at issue. Therefore, summary judgment is appropriate with respect to Count I.

### D. Count II - Plaintiff's § 1983 Claim Against the City

Under § 1983, a municipality may only be found liable when the municipality itself, through the execution of either its policies or customs, actually causes the constitutional harm at issue. *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 691–94 (1978). A municipality cannot be held liable for a § 1983 action on a theory of *respondeat superior*. *Id.* at 691. Accordingly, the municipality cannot be sued under § 1983 for "an injury inflicted solely by its employees or agents." *Id.* at 694. A Plaintiff may succeed by contending that the municipality caused the injury by its failure to provide adequate training. However, "inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). To succeed on a claim brought under § 1983 against the City, Plaintiff must prove that "the training program at issue is inadequate to the tasks that

officers must perform; that the inadequacy is the result of the city's deliberate indifference; and that the inadequacy is 'closely related to' or 'actually caused' the plaintiff's injury." *Hill v. McIntyre*, 884 F.2d 271, 275 (6th Cir. 1989) (quoting *City of Canton*, 489 U.S. at 1205–06).

Plaintiff has alleged that LPD officers did not receive training on how to serve a warrant involving custody, how to interpret EPOs or court orders, or what to do when there is confusion over the meaning of an order. [Record No. 71, p. 38] The City of Lawrenceburg has failed to produce evidence of a training program or policy on these matters. For the purposes of a motion for summary judgment, the Court must view the facts in the light most favorable to the plaintiff, and assume the City has no training program for these matters. Assuming the City has not trained its officers in serving or interpreting EPOs, the Court finds that to be, at minimum, "closely related to" the injury in the current case. Finally, the plaintiff has alleged at least a genuine issue of material fact that the failure to establish a training program for these matters amounts to a "deliberate indifference." Deliberate indifference can be proved by showing that the city failed to train its employees to handle a recurring situation that presents an obvious potential for constitutional violations. *See Board of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 409 (1997). In this case, the service of EPOs is a recurring situation. Both Officers Doty and Atkins have served numerous EPOs. Serving EPOs, like serving warrants, has the potential to implicate constitutional rights, especially when the EPO transfers custody of a child. In this case, Plaintiff has established a genuine issue of material fact that a failure to train caused the injury alleged. Therefore, the Court will deny Defendant's motion for summary judgment as to Count II.

### E. Count III - Plaintiff's Negligent Supervision Claim

In Count III of her First Amended Complaint, Plaintiff alleges that the City of Lawrenceburg was negligent in its hiring, supervision, and/or retaining of Lieutenant Atkins, Officer Doty, and Dispatcher Sparrow. [Record No. 47, p. 8] Under Kentucky law, "an employer can be held liable when its failure to exercise ordinary care in hiring or retaining an employee creates a foreseeable risk of harm to a third person." *Oakley v. Flor-Shin, Inc.*, 964 S.W.2d 438, 442 (Ky. App. 1998). The Kentucky courts have also extended the potential liability to claims for negligent supervision. *See Smith v. Isaacs*, 777 S.W.2d 912 (Ky. 1989). In *Smith*, the Kentucky Supreme Court adopted the Restatement (Second) of Agency § 213, which outlines the elements of a negligent supervision claim. *Id.* at 914; *see also Booker v. GTE.net LLC*, 350 F.3d 515, 517 (6th Cir. 2003). Under § 213, an employer can be held liable when he or she is "negligent or reckless . . . in the employment of improper persons or instrumentalities in work involving risk of harm to others: in the supervision of the activity . . ." Restatement (Second) of Agency § 213 (1958). The Court has previously concluded that Plaintiff has shown a genuine issue of material fact regarding whether the City of Lawrenceburg properly trained its officers in the interpretation and service of EPOs. For a negligent supervision claim, a Plaintiff must also demonstrate that the employer "knew or had reason to know of the risk that the employment created." *Booker*, 350 F.3d at 517 (citing Restatement (Second) of Agency § 213 (1958) (Comment & Illustrations)). In this case, if the City of Lawrenceburg did not train its employees as to the service and interpretation of EPOs, they should have known of the risk such failure created. The City knew its officers served EPOs, it knew or should have known that important rights are implicated by the service of EPOs. It therefore knew or should have known that allowing untrained officers to complete a task could cause potential harm. Accordingly, Dempsey has alleged facts sufficient to support a claim for negligent supervision and training

against the City of Lawrenceburg. The Defendants' Motion for Summary Judgment will be denied with respect to Count III.

### F. Count IV - Plaintiff's Negligence Claims Against the Officers

Plaintiff's fourth cause of action is for the purported negligence of Officers Doty, Sparrow, and Atkins. In response, Defendants have asserted statutory immunity, qualified official immunity, and quasi-judicial immunity. Where the officers' actions were objectively reasonable, they are entitled to immunity on the state law claims as well.

Kentucky law provides immunity for officers who issue EPOs. KRS § 403.755(2) provides:

> Orders issued under the provisions of KRS 403.740 or 403.750, whether an emergency protective order or an order following a hearing, shall be enforces in any county of the Commonwealth. Officers acting in good faith shall be immune from criminal and civil liability.

The officers were issuing an emergency protective order — conduct which is plainly within the purview of the statute. The only argument Plaintiff has made in attempt to circumvent this clear grant of immunity is that the Defendants did not act in good faith. "'Good faith' is just a presumption that exists absent evidence of 'bad faith.'" *Rowan County v. Sloas*, 201 S.W.2d 469, 475 (Ky. 2006). "Bad faith can be predicated on a violation of a constitutional, statutory, or other clearly established right which a person in the public employee's position presumptively would have known was afforded to a person in the plaintiff's position, *i.e.*, objective unreasonableness." *Yanero v. Davis*, 65 S.W.3d 510, 523 (Ky. 2001). The Court has already addressed the issue of whether Defendants' actions were objectively reasonable and concluded that they were. Therefore, the Court also concludes that they did not act in bad faith and are entitled to statutory immunity under KRS § 403.755(2). Because statutory immunity plainly applies, it is not necessary to address issues of

qualified official or quasi-judicial immunity. The Defendants motion for summary judgment regarding Count IV will be granted.

### G. Count V - Plaintiff's Punitive Damages Claim

Dempsey asserts in Count V of her First Amended Complaint that all Defendants should be liable for punitive damages. In light of the foregoing findings and conclusions regarding Officers Doty, Atkins, and Sparrow, the Court need only analyze Count V as it relates to the City of Lawrenceburg. And because punitive damages are not permissible against the City of Lawrenceburg, the Court also will grant summary judgment on Count V.

The Supreme Court has explicitly held that punitive damages are not available in suits against municipalities under § 1983. *Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981) ("[W]e hold that a municipality is immune from punitive damages under 42 U.S.C. § 1983."). In *Newport*, the Court held that punitive damages are only available if they are authorized by statute. *Id.* at 261 n. 21. However, § 1983 does not authorize punitive damages. 42 U.S.C. § 1983; *Newport*, 453 U.S. at 261–63.

The City of Lawrenceburg is also immune from punitive damages in Plaintiff's state law claims. KRS § 65.2002 states that the "amount of damages recoverable against a local government . . . shall not exceed the total damages suffered by plaintiff." The Kentucky courts have affirmed the rule that punitive damages are not recoverable against municipalities or their agencies. *Louisville Metro Hous. Auth. v. Burns*, 198 S.W.3d 147 (Ky. App. 2005); *Shively v. Craig*, No. 84-CA-2005, 1985 Ky. App. Lexis 724 (1985). Accordingly, Plaintiffs claim for punitive damages against the City of Lawrenceburg fails as a matter of law, and summary judgment will be granted in Defendants' favor on Count V.

### III. CONCLUSION

Individual police officers cannot be held personally liable for acts done in good faith and for pursuing a course of conduct which was objectively reasonable. Under the circumstances presented, the individual defendants are entitled to qualified immunity. The officers are also entitled to statutory immunity, as their conduct related to the good faith service of an emergency protective order. Additionally, the official-capacity claims against the officers should be dismissed. Finally, the Court concludes that punitive damages are not proper against the City under the theories presented.

Dempsey, however, has presented a genuine issue of material fact regarding her claims against the city under § 1983 and for negligent supervision. Accordingly, it is hereby

**ORDERED** that Defendants' Motion for Summary Judgment [Record Number 68] is **GRANTED** as to Counts I, IV, and V of Plaintiff's First Amended Complaint [Record No. 47] and **DENIED** as to Counts II and III.

This 23rd day of September, 2010.



Signed By:
*Danny C. Reeves* DCR
United States District Judge